IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LYDON MCCANN-MCCALPINE, *et al.*, | * | |
| | * | |
| Plaintiffs | * | |
| | * | Civ. No. MJM-24-2181 |
| v. | * | |
| | * | |
| AMPED UP! FAMILY | * | |
| AMPHITHEATRE, LLC, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Self-represented plaintiff Lydon McCann-McCalpine ("Plaintiff") and his minor children, N.J. and I.J., filed this civil action against Amped Up! Family Amphitheatre, LLC; Ms. Vogel of the Baltimore County Child Protective Services; Briana Shirey and Jane Does 1, 2, and 3 of Baltimore County Family Support Services;[1] and Officer Miles, Corporal Foehrkolb, and Sergeant Sullivan of the Baltimore County Police Department ("BCPD"). ECF No. 1 (Complaint). The Complaint alleges violations of the Eighth, First, and Fourteenth Amendments to the United States Constitution, as well as violations of the "Child Care Protection Act" and Maryland Code, Family Law § 5-407. *Id.* This matter is before the Court on the defendant police officers' ("BCPD Defendants") Motion to Dismiss, ECF No. 18, and the separate Motion to Dismiss filed by Ms. Vogel, Ms. Shirey, and Jane Does (collectively, "State Defendants"), ECF No. 20. The motions

---

[1] Baltimore County Child Protective Services and Family Support Services are each divisions of Baltimore County Department of Social Services ("DSS").

are ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the motions and dismiss the Complaint without prejudice.

## I.     BACKGROUND

### A.  Factual Background

The following facts are drawn from the Complaint.

On June 28, 2024, Plaintiff called Ms. Briana Shirey to discuss his upcoming supervised visitation with his children, N.J. and I.J. ECF No. 1, ¶ 16. Plaintiff asked for the supervisors to note any concerns regarding his children and was assured that all comments, conversations, complaints, concerns, and conditions of his children would be noted each visit. *Id.* Plaintiff asserted that he had reason to believe that N.J. and I.J. "were being mentally abused and alienated from seeing [Plaintiff]." *Id.* ¶ 17. This concern was based on a conversation Plaintiff had with N.J. on FaceTime. *Id.* ¶¶ 17–18. Ms. Shirey told Plaintiff that she would note his concerns of mental abuse before the first visit. *Id.* ¶ 19.

On July 14, 2024, Plaintiff had his first visit with his children. *Id.* ¶ 20. Plaintiff observed scars, cuts, and abrasions on his children's hands. *Id.* He had to follow certain rules that included leaving his phone in a bucket and not taking pictures of the injuries he observed on his children. *Id.* Jane Doe social workers did not document the injuries or Plaintiff's questioning about the injuries. *Id.* Plaintiff had his last supervised visit the following week, on July 21, 2024. *Id.* ¶ 21. When his children walked in, Jane Does ignored injuries on their arms. *Id.* Plaintiff asked about the scars, but the children did not answer. *Id.* Plaintiff ended the visits, telling the social workers that he could no longer act as if the injuries were okay. *Id.* ¶ 22. The social workers reported that he ended his visitation but did not note the reasons for doing so. *Id.* ¶ 26. Plaintiff alleges that the

rules governing his supervised visits prevented him from speaking freely with his children and prevented them from explaining their injuries. *Id.* ¶¶ 23–24.

On July 22, 2024, Plaintiff called 911 and reported child abuse/neglect and assault on his children based on the injuries he viewed on their bodies during his visitation. *Id.* ¶ 29. Plaintiff reported that medical attention was necessary. *Id.* ¶ 30. Officer Miles responded to the home where Plaintiff's children were located. *Id.* ¶ 31. The Court infers that Plaintiff was also present, outside the location. While Officer Miles's body camera was on, Plaintiff stated that his children were being physically abused and that they had injuries from their fingertips to their elbows and requested that the officer take pictures of the injuries. *Id.* Officer Miles went inside and spoke with the children's mother. *Id.* He reported that he noticed the injuries but did not take photos. *Id.* Plaintiff requested that Officer Miles's supervisor, Cpl. Foehrkolb, report to the scene. *Id.* ¶¶ 35, 37. Plaintiff informed Cpl. Foehrkolb of the situation, and Cpl. Foehrkolb entered the residence. *Id.* ¶ 38. After returning outside, Cpl. Foehrkolb stated that he saw the children's injuries and that he took the pictures. *Id.* ¶ 39. Plaintiff requested to see the pictures but was told that he would have to request them because they were evidence. *Id.* Cpl. Foehrkolb did not request medical attention for the children because he deemed their injuries minor. *Id.* ¶¶ 41–45. Cpl. Foehrkolb's supervisor, Sgt. Sullivan, agreed that the children did not need medical attention. *Id.* ¶ 45. Plaintiff contends that his children's injuries were severe. *Id.* ¶ 42.

On July 25, 2024, Plaintiff followed up with the Department of Social Services to check the status of the case he opened regarding his children's welfare. *Id.* ¶ 46. Ms. Vogel informed Plaintiff that his case had been closed. *Id.* Plaintiff was also informed by another officer that Cpl. Foehrkolb never submitted pictures of the children's alleged injuries into evidence. *Id.* ¶ 52.

### B. Procedural Background

On July 26, 2024, Plaintiff filed the Complaint in this matter against Amped Up! Family Amphitheatre, LLC, Ms. Vogel, Briana Shirey, Jane Does 1–3, Officer Miles, Cpl. Foehrkolb, and Sgt. Sullivan (collectively, "Defendants"), in both their individual and official capacities. ECF No. 1. Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments, as well as violations of the "Child Care Protection Act" and Maryland Code, Family Law § 5-407. *Id.* ¶¶ 56–60. He seeks punitive and compensatory damages in excess of one trillion dollars against all Defendants in both their individual and official capacities. *Id.* ¶¶ 14, 61–64. BCPD Defendants filed a Motion to Dismiss, ECF No. 18, and State Defendants filed a separate Motion to Dismiss, ECF No. 20. Plaintiff filed a response in opposition to State Defendants' motion. ECF No. 22.[2]

## II.    STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads

---

[2] A summons was issued to Amped Up! Family Amphitheatre, LLC ("Amped Up!"), which was returned unexecuted. ECF No. 17. There is no allegation in Plaintiff's Complaint against Amped Up!. *See generally* ECF No. 1. In his response to State Defendants' motion, Plaintiff appears to disclaim any liability by Amped Up!. *See* ECF No. 22, ¶ 1 ("Supervised visitations was attended by plaintiffs at Baltimore county family visitation center in cockeysville, not Amped Up! Family Amphitheatre.").

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to

the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Further, "pro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King*, 825 F.3d at 212, 214) (internal quotations omitted).

## III.    DISCUSSION

### A.  Eleventh Amendment Immunity

State Defendants argue that the five named defendant state officials, Ms. Shirey, Ms. Vogel, and Jane Does 1–3, are named in their official capacities and therefore are entitled to sovereign immunity, ECF No. 20-1 at 4–5, and that they, as state officials named in their official capacities, are not "persons" subject to suit under 42 U.S.C. § 1983, *id.* at 5.

Title 42, United States Code, Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The U.S. Court of Appeals

for the Fourth Circuit has held that "neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." *Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also Will*, 491 U.S. at 71 ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Does 1–22 v. Bd. of Educ. of Prince George's Cnty.*, 644 F. Supp. 3d 149, 157–58 (D. Md. 2022). Indeed, under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Amison v. George Mason Univ.*, No. 23-1042, 2023 WL 8946774, at *2 (4th Cir. Dec. 28, 2023) (per curiam) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). "While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code, Ann., State Gov't, § 12-101, *et seq*[.], it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003), *aff'd*, 88 F. App'x 610 (4th Cir. 2004).

Here, State Defendants are Maryland state officials sued in their official capacities. *See* Md. Code Ann., Hum. Servs. § 2-201 (establishing the Department of Human Services as a "principal department of the State"); *id.* § 3-201 (creating local departments referred to as "the department of social services preceded by the name of the county"); COMAR 07.02.01.04 (Baltimore County Family Support Services as a division of the Baltimore County Department of Social Services); *Keller v. Prince George's Cnty.*, 923 F.2d 30, 32 (4th Cir. 1991) (holding local departments of social services are agencies of the State of Maryland.). Therefore, Plaintiff's claims against these officials are, in essence, claims against the State of Maryland, which has not waived

its Eleventh Amendment sovereign immunity from suit in federal court. Moreover, state officials sued in their official capacities are not "persons" subject to suit under § 1983. Accordingly, Plaintiff's claims against State Defendants in their official capacities must be dismissed.

### B. Constitutional Claims

#### 1. Eighth Amendment

Plaintiff alleges that Defendants' "retaliation" violated his rights and "constituted cruel and unusual punishment[.]" ECF No. 1, ¶ 56. The Eighth Amendment to the U.S. Constitution prohibits the government from inflicting "cruel and unusual punishment," thereby "limiting what the Government can do while applying or imposing punishment." *Hodges v. Meletis*, 109 F.4th 252, 259 (4th Cir. 2024) (quoting U.S. Const. amend. VIII). Eighth Amendment protections apply only to individuals convicted of a crime and serving a sentence. *Wallace v. Moyer*, Civ. No. CCB-17-3718, 2020 WL 1506343, at *9 (D. Md. Mar. 30, 2020) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015)). The Complaint does not allege that Plaintiff was a convicted prisoner at the time of the alleged constitutional violations. Therefore, the Eighth Amendment claim in Count I shall be dismissed without prejudice.

#### 2. First and Fourteenth Amendments

In Counts II and III of the Complaint, Plaintiff asserts claims based upon alleged violations of the First and Fourteenth Amendments. Plaintiff's First Amendment claim in Count II challenges certain rules that he alleges prevented him from speaking freely during his supervised visitation with his children. ECF No. 1, ¶¶ 23, 57. The Complaint does not describe these rules in any detail or provide any information about them, except to say that the rules prevented him from possessing his cell phone and taking photos during his supervised visit with his children. *Id.* ¶ 20. In his response to State Defendants' motion, Plaintiff includes a scanned copy of a page titled "Visitation

Center of Baltimore County Rules and Regulations." ECF No. 22 at 2. The provided list of rules states that visiting parents and children may not whisper, discuss future visits, discuss the other parent or their acquaintances, or speak in a language other than English. *Id.* Plaintiff alleges that there were other, unwritten rules as well. *Id.* at 3. Plaintiff's Fourteenth Amendment claim in Count III is based on the assertion that he was deprived of "freedom to disseminate information or freedom of worship." ECF No. 1, ¶ 58.

The First Amendment, made applicable to the States through the Fourteenth Amendment, forbids government actors from "abridging the freedom of speech" and from "prohibiting the free exercise" of religion. U.S. Const. amend. I. But the right of free expression guaranteed by the First Amendment is "not without limit." *Hulbert v. Pope*, 70 F.4th 726, 733 (4th Cir.), *cert. denied*, 144 S. Ct. 494 (2023). Even protected speech on public property may be subject to reasonable and content-neutral restrictions on "time, place, or manner" of expressive activity. *Id.* (citing *McCullen v. Coakley*, 573 U.S. 464, 486 (2014)). And even "[c]ontent-based" restrictions "that target speech based on its communicative content[,]" although "presumptively unconstitutional[,] . . . may be justified" if "they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citation omitted).

Here, Plaintiff does not allege sufficient facts to state a plausible claim that the unspecified rules enforced during his supervised visits with his children unreasonably abridged speech protected by the First Amendment. Review of the Complaint contains only formulaic allegations of First Amendment violations without factual enhancement and thereby leaves one only to speculate whether a constitutional violation occurred. Although Plaintiff identifies specific rules in his opposition brief that may amount to presumptively unconstitutional content-based restrictions on protected speech, these rules are not specified in the Complaint. "[I]t is axiomatic

that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016) (quoting *Whiting–Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F.Supp.2d 321, 334 (D. Md. 2012)) (internal quotation marks omitted). Indeed, "[a] plaintiff 'is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.'" *Id.* (quoting *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998)).

Moreover, Plaintiff does not explain in the Complaint what role each defendant personally played in infringing upon his free speech rights. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Plaintiff's opposition brief provides further detail about the personal involvement of some of State Defendants in enforcing what Plaintiff contends to be unconstitutional rules. But, again, Plaintiff's opposition brief does not constitute an amendment or supplement to the Complaint. *See McDonald*, 219 F. Supp. 3d at 541.

Finally, in the Complaint, there is no indication at all how Plaintiff's rights to free exercise of religion were implicated by the events alleged therein.

For the foregoing reasons, Counts II and III must be dismissed for failure to set forth plausible violations of the First and Fourteenth Amendments. However, in consideration of Plaintiff's pro se status, he shall be provided an opportunity to file an amended pleading.

### C. State Law Claims

Counts IV and V of the Complaint assert claims under Maryland law. Count IV alleges a violation of the Maryland "Child Care Protection Act," resulting in pain, suffering, physical injury,

and emotional distress to Plaintiff. ECF No. 1, ¶ 59. Plaintiff offers no citation to any such statute. In Count V, Plaintiff alleges a violation of § 5-704 of the Family Law Article of the Maryland Code. *Id.* ¶ 60. That statute, on its face, does not provide for a private right to action. Md. Code Ann., Fam. Law § 5-704 (requiring mandatory reporting for health practitioners, police officers, educators, or human service workers).[3] The Court finds that Counts IV and V fail to state plausible claims for relief and shall therefore be dismissed.[4]

## IV.   CONCLUSION

For the foregoing reasons, BCPD Defendants' and State Defendants' Motions to Dismiss will be GRANTED. The Complaint shall be dismissed without prejudice. Plaintiff shall have 28 days to file an amended complaint.

A separate Order will follow.


  3/20/25                                   /S/
Date                                  Matthew J. Maddox
                                      United States District Judge

---

[3] As Plaintiff points out, there is a criminal statute that makes the failure to report under § 5-704 a misdemeanor. Md. Code Ann., Crim. Law § 3-602.2. State Defendants state that the failure to investigate a child abuse claim "in accordance with Title 5, subtitle 7 of the Maryland Family Law Article may form the basis for a negligence suit in the appropriate case." ECF No. 20-1 at 10. The Court does not construe the Count V to assert any negligence claim.

[4] Even if Counts IV and V stated plausible claims for relief under Maryland law, the Court would decline to exercise jurisdiction in the absence of a viable claim under federal law. Title 28, United States Code, Section 1367(c) states that a district court "may decline to exercise supplemental jurisdiction" over a state law claim when it has "dismissed all claims over which it has original jurisdiction." The Fourth Circuit has recognized that a district court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)).